**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------X
UNITED STATES OF AMERICA,

               Plaintiff,

  - against -

GARRY P. WEBB, a/k/a/ GARRY P.
WEBB-BEY,

               Defendant.
-----------------------------------------------------X

**REPORT & RECOMMENDATION**

06-CV-5317 (SLT) (RER)

**RAMON E. REYES, JR., U.S.M.J.:**

      The United States of America filed this action seeking injunctive relief under the Internal Revenue Code, 26 U.S.C. §§ 7402(a), 7407, and 7408. The government contends that defendant, Garry P. Webb, also known as Garry P. Webb-Bey ("Webb"), prepares federal income tax returns for other taxpayers and that he "falsely informs his customers that income earned in the 50 United States is foreign earned income and thus qualifies for the foreign earned income exclusion." Complaint ¶ 8. The government contends further that the tax returns Webb prepares fraudulently and "completely offset[] [the income earned by his customers] with the bogus foreign earned income exclusion, which reduces his customer's reported tax to zero and results in the customers receiving refunds." *Id.* ¶ 7. The government has moved for a default judgment, and the Honorable Sandra L. Townes referred that motion to me for a report and recommendation. For the reasons set forth below, I respectfully recommend that plaintiff's motion for a default judgment be granted.

## Background

The government served the summons and complaint on Webb on October 5, 2006. Accordingly, Webb's answer was due on October 25, 2006. On October 26, 2006, Webb filed a "Response to Complaint for Permanent Injunction" and "Memorandum of Fact and Law." On October 30, 2006, the government filed a "motion for default judgment," the same day that the Clerk of the Court noted Webb's default. On December 6, 2006, the government moved for a preliminary injunction prohibiting Webb from preparing any federal tax returns during the pendency of this action.

On December 12, 2006, Judge Townes issued an order in which she construed Webb's "Response to Complaint for Permanent Injunction" to be his answer, and his "Memorandum of Fact and Law" to be an addendum setting forth his affirmative defenses. Judge Townes noted that the government's "motion for default judgment" only "requested that the Clerk of the Court *enter* a default." (Emphasis added). Since that relief had already been granted, Judge Townes had the government's motion for default judgment administratively terminated. Judge Townes also set a schedule for Webb to oppose the government's motion for a preliminary injunction.

Webb did not file an opposition to the government's preliminary injunction motion. Accordingly, in a detailed opinion Judge Townes granted in part the government's motion on February 1, 2007. Judge Townes examined each of the government's claims, as well as Webb's defenses, and concluded that an injunction should issue under 26 U.S.C. § 7407, but not under 26

U.S.C. §§ 7402(a) and 7408.[1] In her Memorandum and Order, Judge Townes noted several times that Webb had defaulted, and therefore had conceded the factual allegations in the complaint.

On February 2, 2007, the government filed a motion for default judgment. Webb has not responded to the motion. However, during a discovery conference, Webb requested that the entry of default be vacated. During that conference the Court and the parties discussed the basis for Webb's opposition to the relief the government seeks. As discussed below, Webb's motion to vacate the entry of default should be denied, and the government's motion for a default judgment should be granted in its entirety.

## Discussion

A.  <u>Entry of Default Should Not Be Vacated</u>

Rule 55(c) provides that relief from the entry of a default may be granted for "good cause shown." FED. R. CIV. P. 55(c) ("For good cause shown the court may set aside an entry of default.

---

[1] The Order enjoined:

> [D]efendant Garry Webb a/k/a Garry Webb-Bey from acting as an income tax return preparer and from engaging in any activity subject to penalty under 26 U.S.C. §§ 6694, 6695 or 6701. This preliminary injunction shall prohibit defendant from preparing, filing, or assisting in the preparing and filing of federal income tax returns, amended returns, or other related forms and documents on behalf of any person other than himself. In addition, the preliminary injunction shall require defendant to mail or otherwise deliver a copy of this Memorandum and Order and the Preliminary Injunction issued herewith to his past and current customers on or before February 9, 2007; to explain to these customers that he is prohibited from acting as an income tax return preparer; to inform customers for whom he has filed returns in the past that they should consult another income tax return preparer with respect to the advisability of filing amended returns; and to certify on or before February 16, 2007, that he has fully complied with this Order.

Webb subsequently did not comply with the provisions of the injunction requiring him to notify his customers and file with the Clerk of the Court proof that he fully complied with the Order.

. .").  Although Rule 55(c) does not define "good cause," the Second Circuit has instructed that district courts must consider principally "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).  "As a general rule a district court should grant a default judgment sparingly and grant leave to set aside the entry of default freely when the defaulting party is appearing *pro se*. *Id.*  Of course, the decision on whether to grant relief from the entry of default is left to the sound discretion of the district court as it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties. *Id.*

Webb's default was not willful.  He filed his "answer" only one day late, and since then has attempted to defend against this action.  Although Webb has not complied fully with all of the deadlines the court has set, he appears to have made a substantial effort to do so.  Further, the government will not be prejudiced if the default is set aside.  The only "prejudice" that would result is delay, and delay alone is insufficient.  Although these two factors weigh in favor of vacating the entry of default, I nevertheless recommend that the entry of default not be vacated.

B.   <u>Webb Does Not Have A Meritorious Defense</u>

During the course of the pretrial proceedings it has become clear that Webb does not have a meritorious defense to the government's claims.  Indeed, Webb's defense is entirely frivolous.[2]

---

[2] "A defense is meritorious if it is good at law so as to give the fact finder some determination to make." *American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996).  A claim or defense "is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Benitez v. Wolff*, 907 F.2d 1293, 1295 (2d Cir. 1990).

Webb does not dispute that he prepared tax returns for other United States citizen taxpayers in which they claimed the foreign earned income exclusion on income they earned while residing within "the 50 states." Rather, based on the United States Supreme Court's decision in *Hooven & Allison Co. v. Evatt*, 324 U.S. 652 (1945), Webb argues that his advice and assistance was properly given because "the 50 states" are not part of the United States:

> To put it simply as I can, the basic argument with respect to the [foreign earned income exclusion] is that based on the <u>Hooven</u> case, that the term United States can be used in three different contexts, *and in one of those contexts the term does not include the 50 states – when the term is being used to refer to the federal government and the territory over which it exercises its' sovereignty* - and when one applies this knowledge to how the United States is defined in the regulations promulgated pursuant to section 911 of the IR code it leads one to conclude that *those who live and work in the 50 states for a non-federal government employer can take the exclusion*.

Undated Letter from Webb to Michael J. Roessner, Trial Attorney for the United States Department of Justice, at 5 (emphasis added); *see also* Transcript of June 20, 2007 Conference ("6/20 Tr.") at 21-23 ("There's a supreme court case that I use to base on. This is not me saying it. This is the supreme court that says it."). In so arguing, and although he has never specifically articulated it as such, Webb is apparently relying on the following language from *Hooven*:

> The term 'United States' may be used in any one of several senses. [1] It may be merely the name of a sovereign occupying the position analogous to that of other sovereigns in the family of nations. [2] *It may designate the territory over which the sovereignty of the United States extends*, or [3] it may be the collective name of the states which are united by and under the Constitution.

*Hooven*, 324 U.S. at 672 (brackets, numbers and emphasis added). As Webb argues creatively, although not correctly, that under the second purported definition in *Hooven* "the 50 states" cannot be included within the "United States" because the federal government does not exercise

5

"sovereignty" over the states.³ Thus, he argues, income earned in each state is "foreign earned income" within the meaning of 26 U.S.C. § 911.

    1.    <u>Income Earned in "The 50 States" Is Income Earned in The United States</u>

To analyze Webb's somewhat convoluted argument, one must begin with the wording of the foreign earned income exclusion in the Internal Revenue Code.⁴ Section 911(a) provides:

> **Exclusion from gross income**--At the election of a qualified individual (made separately with respect to paragraphs (1) and (2)), there shall be excluded from the gross income of such individual, and exempt from taxation under this subtitle, for any taxable year--
>
>     (1) the *foreign earned income* of such individual, and
>     (2) the housing cost amount of such individual.

26 U.S.C. § 911(a) (emphasis added). "Foreign earned income" is defined in the Code as the "amount received [in income]. . . from sources within a *foreign country*." 26 U.S.C. § 911(b)(1) (emphasis added). "Foreign country" is defined not in the Code, but in its implementing regulations as including "any territory under the sovereignty of a government other than that of the United States." 26 C.F.R. § 1.911-2(h). "United States" in turn is defined in the regulation as including "any territory under the sovereignty of the United States. *It includes the states*, the District of Columbia, the possessions and territories of the United States, . . ." *Id.* § 1.911-2(g) (emphasis added). Thus, under the explicit terms of the Code and its implementing regulations, the United States includes "the 50 states." *Id.* § 1.911-2(g) & (h). In other words, for purposes

---

    ³ Black's Law Dictionary (6th ed. 1990) defines "sovereignty" as "[t]he supreme, absolute, and uncontrollable power by which any independent state is governed." *Id.* at 1396.

    ⁴ *E.g., Mallard v. U.S. Dist. Court for Southern Dist. of Iowa*, 490 U.S. 296, 300 (1989) (interpretation of statute begins with statute's language); *Saks v. Franklin Covey Co.*, 316 F.3d 337, 345 (2d Cir. 2003) ("Every exercise in statutory construction must begin with the words of the text.").

of section 911's foreign earned income exclusion, "the 50 states" are not foreign countries and income earned therein cannot be excluded from gross income. *See also* Rev. Rul. 2004-28, 2004-12 I.R.B. 624.

The Treasury regulation's definition of the United States as including the fifty states for the purposes of the foreign earned income exclusion is entirely consistent with the whole taxing scheme established by Congress. Section 61(a) of the Internal Revenue Code broadly defines "gross income": "Except as otherwise provided in this subtitle, gross income means all income from whatever source derived." 26 U.S.C. § 61(a). The United States Supreme Court has repeatedly emphasized the "sweeping scope" of this section and its statutory predecessors. *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 429 (1955); *see also United States v. Burke*, 504 U.S. 229, 233 (1992); *Helvering v. Clifford*, 309 U.S. 331, 334 (1940). The Supreme Court has also emphasized the corollary to § 61(a)'s broad construction, namely that "exclusions from income must be narrowly construed." *Burke*, 504 U.S. at 248 (Souter, J., concurring in judgment); *see also United States v. Centennial Savings Bank FSB*, 499 U.S. 573, 583 (1991); *Commissioner v. Jacobson*, 336 U.S. 28, 49 (1949); *Burke*, 504 U.S. at 244. Accordingly, the Treasury regulation's definition of the United States as including the fifty states is entitled to deference. *E.g., United States v. Correll*, 389 U.S. 299, 307 (1967) (treasury regulations are considered valid if they "implement the congressional mandate in some reasonable manner"); *accord Commissioner v. Portland Cement Co. of Utah*, 450 U.S. 156, 169 (1981).

2. *Hooven* Does Not Mandate A Different Result

That the fifty states are part of the United States and not foreign countries for purposes of § 911's earned income exclusion is not in anyway undercut by the *Hooven* dicta upon which

7

Webb relies. Indeed, *Hooven* actually contradicts Webb's argument, which is premised on a fundamental misunderstanding of the constitutional principles of federalism. At its core, Webb's argument is predicated on the theory that the federal government lacks "sovereignty" over the individual states, at least with respect to the power to tax their citizens. That theory is simply wrong.

"As every schoolchild learns, our Constitution establishes a system of *dual sovereignty* between the States and the Federal Government." *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991) (emphasis added); *see also Federal Maritime Com'n v. South Carolina State Ports Authority*, 535 U.S. 743, 749 (2002) ("Dual sovereignty is a defining feature of our Nation's constitutional blueprint."). Under our system of federalism, both the federal and state governments coexist as separate but cooperative sovereigns. *E.g., Tafflin v. Levitt*, 493 U.S. 455, 458 (1990) ("We begin with the axiom that, under our federal system, the *States possess sovereignty concurrent with that of the Federal Government*, subject only to limitations imposed by the Supremacy Clause." (emphasis added)).[5] "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. Amdt. 10. In other words, "[t]he governments of the states are sovereign within their territory save only as they are subject to the prohibitions of the Constitution or as their action in some measure conflicts with powers delegated to the National Government, or with Congressional legislation enacted in the exercise of those powers." *Parker*

---

[5] The Supremacy Clause provides that the "Constitution and the Laws of the United States . . . shall be the supreme Law of the land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., Art. VI, cl. 2.

*v. Brown*, 317 U.S. 341, 3 359-60 (1943). Thus, within the limits established by the Constitution, the federal government may exercise its sovereign power over the states:

> The laws of the United States are laws in the several States, and just as much binding on the citizens and courts thereof as the State laws are. *The United States is not a foreign sovereignty as regards the several States, but is a concurrent, and, within its jurisdiction, paramount sovereignty*. Every citizen of a State is a subject of two distinct sovereignties . . .

*Claflin v. Houseman*, 93 U.S. 130, 136 (1876) (emphasis added).

Under Article I, Section 8 of the United States Constitution, there can be no question that Congress has the power to tax citizens of "the 50 states." U.S. Const., Art. I, § 8, cl. 1 ("The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises . . . ."). The Sixteenth Amendment extended that power further to income taxes. U.S. Const., Amdt. 16 ("The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration."). Thus, the federal government exercises "sovereignty," albeit dual sovereignty,[6] over the fifty states with respect to taxes. Therefore, even under a generous reading of *Hooven* "the 50 states" are part of "the territory over which the sovereignty of the United States extends."

---

[6] *See, e.g., United States Postal Service v. Brennan*, 574 F.2d 712, 718 n.8 (2d Cir. 1978) ("The Constitution provides for a system of dual sovereignties; the power to tax is necessary to the survival of the federal government and of the states."); Alexander Hamilton, Federalist #32 ("As to a supposition of repugnancy between the power of taxation in the States and in the Union, it cannot be supported in that sense which would be requisite to work an exclusion of the States. It is, indeed, possible that a tax might be laid on a particular article by a State which might render it INEXPEDIENT that thus a further tax should be laid on the same article by the Union; but it would not imply a constitutional inability to impose a further tax." (emphasis in original)).

9

324 U.S. at 672.[7] The claim that section 911 excludes income earned in a state because the state is not part of the United States as purportedly defined in *Hooven* thus has no basis in law.

At the end of the day, Webb's "*Hooven* argument" amounts to nothing more than a variant on the many "tax protester" arguments that the courts have repeatedly rejected as frivolous:

> Petitioner attempts to argue an absurd proposition, essentially that the State of Illinois is not part of the United States. His hope is that he will find some semantic technicality which will render him exempt from Federal income tax, which applies generally to all U.S. citizens and residents. *Petitioner's arguments are no more than stale tax protester contentions long dismissed summarily by this Court and all other courts which have heard such contentions.*

*Solomon v. Commissioner*, 66 T.C.M. (CCH) 1201, 1202-03 (1993) (emphasis added).[8] The same result should follow here.

C. Default Judgment Should Be Entered

Because the allegations in the complaint make out a prima facie case entitling the government to judgment as a matter of law, the government's motion for a default judgment should be granted in its entirety. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973

---

[7] Of course, Webb concedes that the states are part of the United States under the other two "definitions" found in *Hooven*. 6/20 Tr. at 22 ("No, it's three different ways [to define United States] – and two of the three ways includes the 50 states.").

[8] *See also, e.g., United States v. Gerads*, 999 F.2d 1255, 1256 (8th Cir. 1993) (rejecting contention that defendants were "not citizens of the United States, but rather 'Free Citizens of the Republic of Minnesota' and, consequently, not subject to taxation"); *United States v. Sloan*, 939 F.2d 499, # (7th Cir. 1991) (rejecting argument that resident of Indiana was not citizen of United States for tax purposes); *In re Becraft*, 885 F.2d 547, 549-50 (9th Cir. 1989) (rejecting claim that federal law governs only District of Columbia and United States territories, and sanctioning attorney for making frivolous arguments); *United States v. Ward*, 833 F.2d 1538, 1539 (11th Cir. 1987) (affirming tax evasion conviction and noting that claim that federal law applies only to the District of Columbia, federal enclaves within States and United States territories is "utterly without merit").

F.2d 155, 158 (2d Cir. 1992) (upon entry of default party concedes all well pleaded factual allegations in complaint). Further, because Webb's defense to this action is frivolous, I respectfully recommend that the entry of default not be vacated and that the preliminary injunction previously entered should be made permanent.

## Conclusion

For the foregoing reasons, I respectfully recommend that the entry of default not be vacated and that the government's motion for a default judgment be granted. The preliminary injunction previously entered should be made permanent. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Chambers of the Honorable Sandra L. Townes within ten days of receiving this Report and Recommendation. Failure to file timely objections may waive the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72; *Small v. Secretary of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

**Dated: September 5, 2007**
   **Brooklyn, New York**

*Ramon E. Reyes, Jr.*
**Ramon E. Reyes, Jr.**
**United States Magistrate Judge**